NIMMONS, Judge.
This is an appeal from an order of the Florida Department of Business Regulation, Division of Florida Land Sales, Condominiums, and Mobile Homes, finding that appellants[1] violated portions of Chapter 498, Florida Statutes (1985), by failing to register a subdivision they were developing. We affirm.
AMI acquired a large tract of land in an unincorporated area of Leon County off of Buck Lake Road. The only lands located in this tract that have been platted are those contained in a subdivision known as “The Antlers” which constituted Phase I of the planned three-phase development of the tract.
Neither AMI nor AMI Realty had a valid order of registration filed with the Division for the offer or disposition of lots or parcels of this property and neither was there a currently approved public offering statement on file with the Division.
The property known as The Antlers was divided into 77 lots which were to be home-sites. AMI, through AMI Realty, contracted to sell 40 lots to DAL Builders, Inc.[2] Appellants began improving The Antlers with roads, drainage, water, electricity and other utilities but before completion of these improvements, appellants sold six additional lots to individuals.
The Division filed a petition and notice to show cause alleging that appellants violated provisions of Chapter 498, Florida Statutes, by failing to register The Antlers according to that Chapter’s requirements. Appellants filed a motion for protective order in which they alleged that The Antlers fell within an exemption under Section 498.- *380 025(1)(d), Florida Statutes (1985), which provides:
(1) Unless the method of offer, disposition, or transfer is adopted for the purpose of evasion of this chapter, the provisions of this chapter do not apply to:
[[Image here]]
(d) A subdivision as to which the plan of disposition is to dispose to 45 or fewer persons.
(E.S.) A formal hearing was held after which the hearing officer entered a recommended order. The Division accepted the findings of fact and concluded that the claimed exemption did not apply to The Antlers. The final order required appellants to pay a civil penalty in the amount of $1,500 for each of the six lots sold without registration, a total of $9,000.
The narrow issue we find to be disposi-tive in this case is whether Section 498.-025(l)(d) exempts appellants from Chapter 498’s registration requirements. It is undisputed that The Antlers is a “subdivision” as defined by Section 498.005(19). Further, appellants are clearly “subdivid-ers” under Section 498.005(18). Evidence showed that appellants sold 40 lots to DAL Builders, Inc. whose intent was to build homes and resell them. Appellants claim that this sale of forty lots to DAL Builders, Inc. should be considered a sale to one person for purposes of application of the “45 or fewer persons” exemption of Section 498.025(l)(d). As admitted by the former head of the Division, it is common business practice to sell a portion of the lots in a subdivision to a single builder thus allowing activity and development in the subdivision which in turn draws purchasers. Nevertheless, we find that this sale of forty lots cannot be considered a disposition to one person under the “plan of disposition” for the Antlers.
Appellants urge us to construe the phrase “plan of disposition” as used in Section 498.025(l)(d) to refer only to the appellants’ sale of lots. Rather, we find that the phrase refers to the overall plan of disposition for the subdivision and includes sales which DAL Builders, Inc. will make to homeowners.
It is undisputed that, from the outset, the plan was for seventy-seven homes to be built for resale in the subdivision. The temporary holding of forty of these lots by a builder until he places homes on them and resells them to individuals does not alter the plan of disposition. Had the legislative concern been only with the immediate disposition which the particular subdivi-der would make, it would have, we believe, used the term “subdivider” instead of “subdivision” in Section 498.025(l)(d).
Our interpretation is consistent with the express legislative intent of Chapter 498, which is, in part, to protect the public from unsound financing techniques. Section 498.003(3), Florida Statutes (1985). In addition, our holding is consistent with the Division’s longstanding interpretation of Section 498.025(l)(d).[3] Such interpretation, made by the agency charged with enforcing a statute, should be accorded great deference unless there is clear error or conflict with the intent of the statute. Sans Souci v. Department of Business Regulation, Division of Land Sales, Condominiums, and Mobile Homes, 421 So.2d 623 (Fla. 1st DCA 1982).
In view of our above holding regarding the proper interpretation of subsection (l)(d) of Section 498.025, we need not address the propriety of the appealed order’s alternative ground for denying the exemption, i.e. that the appellants’ method of offer, disposition, or transfer was adopted “for the purpose of evasion of this chapter,” such being proscribed by Section 498.-025(1).
We also find no merit in appellants’ final point regarding excessiveness of the civil penalty imposed by the Division.
AFFIRMED.
WENTWORTH and WIGGINTON, JJ., concur.

. Appellants are Associated Mortgage Investors (sometimes referred to herein as "AMI"), a Massachusetts Business Trust, and AMI Realty Corporation (sometimes referred to herein as "AMI Realty"), a wholly owned subsidiary of AMI. For purposes of this appeal, the separate identities of these two business organizations is not significant and they will therefore frequently be referred to herein collectively as "appellants."

. The sale of these 40 lots is exempt from the registration requirements of Chapter 498 under Section 498.025(1)(g), Florida Statutes (1985).

. This interpretation was expressed in 1980 in the Division’s Advisory Opinion No. 59.